### CLEVELAND, P. & E. RY. v. JESSIE SITES.

NEGLIGENT SPEED OF ELECTRIC CAR. ·
Where an electric railway company operates its road on the public highway, and runs its cars in the nighttime upon a straight level track, although in the open country, at such a rate of speed that a cow cannot be discovered standing upon the track by the light of the headlight in time to stop the car, and a passenger is injured by reason of the car striking the animal, such facts will justify a jury in rendering a verdict in favor of the passenger for the injuries sustained.

[Syllabus approved by the court.]

ERROR to Lake common pleas court.

**H. E. Hammar,** for plaintiff in error.

**Homer Harper** and **Harry Nolan,** for defendant in error.

**COOK, J.**

Jessie Sites, while a passenger on one of the cars of the Cleveland, Painesville & Eastern Ry. Co., was seriously injured, as she claims, through the negligence of the employes of the railway company. She obtained a verdict for $500 upon which judgment was rendered by the court; and the company now prosecutes error in this court.

A number of errors are assigned but the principal one relied upon, and the only one which we deem important, is that the verdict was not supported by sufficient evidence. There is little conflict in the evidence. The injury occurred by reason of the car running into a cow standing on the track. The track of the company is upon the south side of the public highway and the driveway for the public is on the north side. The highway and track were practically uninclosed, there being no fence on the north side of the highway and very little on the south side of the track.

The track where the injury occurred was in the open country and for a long distance east and west thereof was straight and nearly level. The time was in the evening but after dark. The car went over the cow, throwing off the rear truck, and ran, as the evidence tends strongly to show, some two or three hundred feet after striking the cow. The car was equipped with all the necessary appliances for stopping it, and the headlight was burning.

Lake County.

The motorman testified he did not see the cow until he was within two hundred feet of it, and that he immediately put on the emergency brake, reversed his motor and did all in his power to stop the car. By the testimony of the employes on the car and others, the car was running from thirty-five to forty miles an hour. The car was a heavy express car. The company proved that an object such as a cow standing upon the track could not be seen by the light of the headlight more than three hundred feet, and that it was impossible to stop such a car running at a speed of from thirty-five to forty miles an hour, by proper use of all the appliances for that purpose, in a less distance than four hundred feet.

Counsel for plaintiff in error seem to admit that the fact of the injury under circumstances of this character raises a presumption of negligence upon the part of the company, which presumption must be met by evidence of equal amount and weight; that the maxim of *res ipsa loquitur* applies. Leaving that maxim out of consideration, as there may be some doubt about its applicability, the question arises: Do the facts show such negligence upon the part of the employes of the company as justified the jury in returning a verdict for the plaintiff? The question must be largely, if not entirely, determined upon the fact as to whether or not the car was being run at such a high rate of·speed as to constitute negligence.

This car was running in the open country, and the claim of plaintiff in error is, that in analogy to steam railways, the company had the right to run its cars at any speed that it might deem necessary in the operation of its road. We do not think so. There is little analogy between the running of a train of cars on a steam railway in the open country and the circumstances of this case. In the former the company owns its roadbed absolutely and has exclusive control over it. It is fenced on either side, and persons or animals being upon the track, except at crossings, are trespassers. Here the roadbed was on the public highway and the rights of the public and the company were equal. The highway and track being unfenced, the company might reasonably have anticipated that animals might go upon the track; yet it ran its car at such a rate of speed that if such obstruction should be upon the track it could not see it by the light of the headlight in time to' stop its car although the track was straight and level.

Indeed this is the defense made by the company. We do not think such defense tenable. There may be some doubt as to how far the headlight would light up the track and the distance at which the car

Railway v. Sites.

could have been stopped; but adopting the claim of the company, we are of opinion that it was negligence to run the car at such a rate of speed upon a straight level track that an obstruction could not be seen in time to stop the car. Of what use would be a headlight if the car could not be stopped on a level, straight track within the distance lighted by it?

In the case of *Cincinnati Street Ry.* v. *Lewis*, 13-23 O. C. C. 127 (3 N. S. 115), it is held:

"In the absence of a regulative ordinance, the rule as to speed of electric cars is that of reasonable safety in view of all the facts and surrounding conditions."

The case, as shown by the opinion, was determined upon a case that went to the Supreme Court from the same circuit, where the same doctrine was held, and was affirmed.

*Cleveland City Ry.* v. *Osborn*, 66 Ohio St. 45 [63 N. E. Rep. 604], is relied upon by counsel for plaintiff in error. In that case, it was held:

"Where a passenger on a street railway car was thrown from the car and injured by the sudden stopping of the car in the effort to avoid a collision, and by the shock of a collision which was not brought about by the negligence of the defendant, it is *damnum absque injuria.*"

In that case there could be no claim of negligence upon the part of the gripman. The collision occurred in a street within the city; the bakery wagon was proceeding in the same direction as the car which was going at a speed not to exceed ten or twelve miles an hour, and suddenly the wagon turned across the track. In this emergency which unexpectedly occurred it was the duty of the gripman to use every effort to avoid the collision. His duty, not only to the driver of the wagon but also to his passengers, was to avoid a collision if possible. We do not think that case governs the case we have under consideration.

The judgment of the court of common pleas will be affirmed.

**Laubie** and **Metcalfe, JJ.,** concur.